UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GROUP14 TECHNOLOGIES, INC., Plaintiff / Counterclaim Defendant, v. NEXEON LIMITED, Defendant / Counterclaimant. | C22-1354 TSZ ORDER |

THIS MATTER comes before the Court on a motion brought by counterclaim defendant Group14 Technologies, Inc. ("Group14"), docket no. 180, to exclude the testimony of Neil Beaton, the damages expert for counterclaimant Nexeon Limited ("Nexeon"). By Minute Order entered August 14, 2026, docket no. 191, the Court required the parties to provide supplemental briefing. Having reviewed Nexeon's and Group14's supplemental briefs, docket nos. 202 and 203, respectively, and all other papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

This litigation began on September 23, 2022, when Group14 sued Nexeon for misappropriation of trade secrets, breach of contract, and unjust enrichment. *See* Order at 2 (docket no. 134) (citing Compl. at ¶¶ 47–75 (docket no. 1)). Nexeon asserted three counterclaims, but only one (tortious interference with business expectancy) survived

motion practice. *See id.* at 2 & n.3 (citing Ans. & Am. Countercl. (docket no. 47) & Order (docket no. 56)). By Order entered September 18, 2024, Group14's claims against Nexeon were dismissed with prejudice. Order at 33 (docket no. 134). The dismissal was affirmed on appeal, *see* 9th Cir. Mem. (docket no. 158), and on remand, the only remaining issues involve Nexeon's pursuit of attorney's fees relating to Group14's failed federal and state claims for trade secret misappropriation, *see* Minute Order (docket no. 175), and Nexeon's counterclaim for tortious interference with business expectancy.

With regard to the latter subject, Nexeon alleges that it had "a valid contractual relationship or a valid expectation of a contractual relationship" with "at least" the six (6) "potential customers, investors, or business partners" identified in its pleading. *See* Ans. & Am. Countercl. at ¶ 56 (docket no. 47). Nexeon claims that these entities "terminated negotiations and relationships" with it "based in significant part on Group14's baseless allegations of trade secret misappropriation," *id.* at ¶ 57, and it seeks judgment against Group14 "in an amount of money sufficient to compensate . . . for the harm caused by Group14's tortious interference," *id.* at § VI(A). Nexeon's expert has offered three alternative analyses concerning Nexeon's estimated damages:

a. Scenario 1 – Delay Period Damages: damages caused by "the delay in generating the projected cash flows set out in the financial projections prepared shortly before the Lawsuit was filed";

b. Scenario 2 – Lost Incremental Equity Value: "the reduction in Nexeon's equity value . . . resulting from a reduction in Nexeon's projected cash flows following the Lawsuit as compared to its cash flows projected prior to the Lawsuit"; or

c. Scenario 3 – Lost Post-Money Equity Value: "a reduction in Nexeon's post-money equity value resulting from Nexeon being required to raise

> external equity capital at a significantly lower valuation due to the presence of the Lawsuit."

Beaton Report at ¶¶ 8(a)–(c) (docket nos. 182 & 185). Nexeon does not seek any other forms of damages. *See* Supp. Disclosure Pursuant to Fed. R. Civ. P. 26(a) at § III (docket no. 199-2 at 8–9) (served on August 21, 2026) (in its required disclosure concerning "a computation of each category of damages claimed," Fed. R. Civ. P. 26(a)(1)(A)(iii), Nexeon indicated that its "alleged damages have been calculated in the expert report of Neil Beaton served June 25, 2026"); *accord* 2d Supp. Disclosure Pursuant to Fed. R. Civ. P. 26(a) at § III (docket no. 199-4 at 11) (served on August 28, 2026).

Group14 moved to exclude Beaton's testimony for five reasons, many of which were previously rejected by the Court. *See* Minute Order at 2 nn.2–3 (docket no. 191). In its supplemental briefing, Group14 contends that Beaton's opinions are not consistent with Washington law. Nexeon argues to the contrary. The questions now before the Court are (i) whether Beaton's calculations relate to the types of damages that are recoverable for the tort at issue; and (ii) if not, whether Nexeon's counterclaim should be dismissed. These issues will be addressed seriatim.

## Discussion

### A. Measure of Damages

The parties do not dispute that Washington courts have adopted the measure of damages for interference with contracts or prospective contractual relations that is set forth in the Restatement, namely:

> (a) the pecuniary loss of the benefits of the contract or the prospective relation;

> (b) consequential losses for which the interference is a legal cause; and
>
> (c) . . . actual harm to reputation, if . . . reasonably to be expected to result from the interference.

RESTATEMENT (SECOND) OF TORTS § 774A(1); *see Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 714, 315 P.3d 1143 (2013) (quoting § 774A(1)); *see also Glacio Inc. v. Dongguan Sutuo Indus. Co.*, No. 22-CV-29, 2024 WL 1705921, at *8 & n.4 (E.D. Wash Apr. 18, 2024) ("'In the absence of local authority,' the Washington courts look to the Restatement of Torts 'to guide the development' of state tort law." (quoting *Tamosaitis v. Bechtel Nat'l, Inc.*, 182 Wn. App. 241, 249–50, 327 P.3d 1309 (2014))). The three potential components of damages, *i.e.*, pecuniary loss (lost profits), consequential losses, and harm to reputation, must be proven with "a reasonable degree of certainty." *See* RESTATEMENT (SECOND) OF TORTS § 774A(1) cmt. c; *see also Gregg Roofing*, 178 Wn. App. at 715. For business entities, as opposed to individuals or professional entities, reputation and goodwill are essentially synonymous. *See Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, No. C09-285, 2011 WL 4402775, at *5 (W.D. Wash. Sept. 21, 2011), *aff'd in part & rev'd in part on other grounds*, 762 F.3d 829 (9th Cir. 2014).

In his report, Nexeon's expert Neil Beaton did not describe his computations as reflecting pecuniary loss (lost profits), consequential damages, or harm to reputation (diminution in goodwill). *See* Beaton Report (docket nos. 182 & 185). Instead, Beaton identified three "scenarios" that were premised on an income (as opposed to cost or market) approach and relied on "management-prepared long-term projections" (rather than historical data), which Beaton "assumed, without audit," were "complete and

reasonably accurate." See id. at ¶¶ 4 & 29. Nexeon unsuccessfully attempts to correlate each of Beaton's three "scenarios" with an element of damages for tortious interference with business expectancy that has been recognized by Washington courts.

**1. Pecuniary Loss and "Delay Period Damages"**

Nexeon asserts that Beaton's "Delay Period Damages" are analogous to lost profits. The Court is not persuaded by this argument. Profit is equal to the gross amount received for products or services minus the cost of running the business. See 22 Am. Jur. 2d *Damages* § 467; *see also* BLACK'S LAW DICTIONARY 1404 (10th ed. 2014) (defining profit as "the excess of revenues over expenditures in a business transaction"); *accord* WEBSTER'S 3D NEW INT'L DICTIONARY 1811 (1981); *cf.* 9th Cir. Model Instr. 15.31 ("Profit is determined by deducting all expenses from gross revenue."). Beaton's "Delay Period Damages" bear no resemblance to lost profits. What Beaton has computed is the difference in present value of hypothetical "cash flows," assuming they existed on dates that are three years apart, which (in Beaton's view) represents the delay allegedly attributable to this litigation. See Schedule 2 to Beaton Report (docket no. 182 at 45). Although revenues and expenditures might be reflected in the "cash flows" at issue (*i.e.*, in the amounts projected to be flowing into and out of Nexeon's coffers), the actual amounts and precise relationships cannot be ascertained in the absence of other data, and thus, neither the theoretical yearly cash flow figures themselves nor any delay in realizing the annualized "cash flows" can establish Nexeon's expected profits or its lost profits.

Lost profits are usually proven through a company's profit history. *See Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 16, 390 P.2d 677 (1964). Before *Larsen*, the "new

business rule" precluded an entity with unknown labor, manufacturing, marketing, and other costs from recovering prospective profits. *Id.* In *Larsen*, the Washington Supreme Court adopted the following standard: "lost profits will not be denied merely because a business is new **if** factual data is available to furnish a basis for computation of probable losses." *Id.* at 17 (emphasis added, quoting *Barbier v. Barry*, 345 S.W.2d 557, 563 (Tex. Civ. App. 1961)). The *Larsen* Court further observed that, "[a]lthough expert testimony is a sufficient basis for an award of lost profits, their opinions must be based upon tangible evidence rather than upon speculation and hypothetical situations." *Id.* at 19. The information available to the experts in *Larsen* consisted of an industry-wide study of operational costs, industry averages and statistics, and the business records of the company for which lost profits were sought, which documented product pricing and overhead costs. *Id.* at 17–18.

In a subsequent case, the Washington Supreme Court affirmed an award of lost profits that were computed using averages over a seven-year timespan (1971–1978) to calculate the gross receipts not received during the year (1976) that the plaintiff was injured and unable to work as a result of the defendant's negligence in repairing his truck. *See Lundgren v. Whitney's, Inc.*, 94 Wn.2d 91, 97–99, 614 P.2d 1272 (1980). Subtracted from these lost gross receipts were the related expenses that were not incurred. *Id.* at 97. The *Lundgren* Court explained that a party seeking lost profits must "produce the best evidence available," and it reiterated that lost profits are recoverable only if "the evidence permits their estimation with reasonable certainty." *Id.* at 97–98. In *Lundgren*, the Washington Supreme Court concluded that the testimony of the bookkeeper for the

plaintiff's company, who had performed the lost profits analysis, afforded "a reasonable basis for estimating the loss." *Id.* at 98–99.

In contrast to *Larsen* and *Lundgren*, in this matter, neither Nexeon nor its expert is relying on non-speculative business records or industry information and/or statistics to estimate prospective gross receipts and related expenses to derive lost profits. Rather, Beaton has merely assumed the accuracy of the "cash flows" for a nine-year period that were set forth in a one-page, unaudited document prepared before this lawsuit began (the "Pre-Lawsuit Projections"). *See* Beaton Report at ¶¶ 4, 20, & 53 (docket no. 182) (citing NEXEON_013957). Beaton's analysis is not based on, and Nexeon has not provided, the "best evidence available" for estimating any lost profits. Neither Beaton nor Nexeon has linked any specific amount of damage to the loss of a particular customer, investor, or business partner, and they have not estimated the quantity of lost sales or the associated lost revenue or cost savings. Beaton's calculations are entirely speculative, premised on nothing other than unaudited and possibly unwarranted cash flow projections. *See Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-217, 2020 WL 5095458, at *8 (W.D. Wash. Aug. 28, 2020) (observing that the plaintiffs failed to support their estimates with "any business records, projections, or other analysis based on [their] *actual* sales" (emphasis added)).

Nexeon cites no authority for the proposition that Beaton's "Scenario 1" approach or "Delay Period Damages" constitute a reasonable and acceptable alternative to the traditional understanding of lost profits. Based on this record, the Court concludes that "Delay Period Damages" do not correspond to lost profits or to any pecuniary loss of the benefits of the contracts or prospective relations at issue. Nexeon does not contend that

"Delay Period Damages" are in the nature of consequential losses or diminution in goodwill, and thus, they do not fall within any of the types of damages that are recoverable for tortious interference with business expectancy. As a result, with respect to "Delay Period Damages," Beaton's testimony must be excluded.

**2. Consequential Loss and "Lost Post-Money Equity Value"**

Nexeon argues that Beaton's "Lost Post-Money Equity Value" is a measure of consequential loss. Beaton has compared Nexeon's targeted post-money valuation in the first quarter of 2024 against Nexeon's targeted post-money valuation in 2025 (after Nexeon had raised substantial, albeit less than desired, funds from existing shareholders) to compute a nine-figure reduction in targeted post-money valuation, which is allegedly attributable to this litigation. *See* Beaton Report at ¶¶ 58–60 (docket no. 182). Notably, however, the 2024 figure was estimated more than a year after this lawsuit commenced and, by 2025, the Court had already granted summary judgment in Nexeon's favor and dismissed Group14's claims. *See* Order (docket no. 134) (dated September 18, 2024). Thus, Beaton has not relied on data that might reflect the impact of this litigation on Nexeon's targeted post-money valuation.

Group14 contends that Nexeon is not entitled to any consequential loss because it cannot demonstrate pecuniary loss. Two of the three Divisions of the Washington Court of Appeals have ruled that proof of pecuniary loss is a prerequisite to recovery for consequential damages related to interference with a business expectancy. *Tamosaitis*, 182 Wn. App. at 249–51 ("a claim of tortious interference with a business expectancy requires a threshold showing of resulting pecuniary damages," and "[a]dditional damages

may be recoverable in conjunction with the pecuniary loss"); *accord Hass v. Schourup*, No. 56972-8-II, 2023 WL 4743341, at *4–5 (Wash. Ct. App. July 25, 2023). The Ninth Circuit has treated *Tamosaitis* as setting forth the law of Washington. *See Edifecs, Inc. v. Welltok, Inc.*, 840 F. App'x 224, 225 (9th Cir. 2021); *see also Jinni Tech*, 2020 WL 5095458, at *7 ("Washington courts have determined conclusively that pecuniary loss is a 'threshold element for recovery under the tort of interference with a business relationship just as it is for the tort of interference with a contract.'" (quoting *Tamosaitis*, 182 Wn. App. at 250–51)), *aff'd*, 854 F. App.'x 171 (9th Cir. 2021). In *Tamosaitis*, the plaintiff sought damages for emotional and reputational harm, but because he could not establish any pecuniary loss, the lower court's grant of summary judgment against him on his tortious interference with business expectancy claim was affirmed. 182 Wn. App. at 249–53. Under Washington law, as articulated in *Tamosaitis* and *Hass*, the Court concludes that, because Nexeon has not proffered any non-speculative evidence of pecuniary loss, it cannot recover for consequential damages, including any diminution in goodwill. *Cf. Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 n.19 (9th Cir. 2004) (observing that loss of goodwill is a consequential economic loss (citing BLACK'S LAW DICTIONARY 552 (8th ed. 2004))). As to "Lost Post-Money Equity Value," Beaton's testimony must be excluded.

**3. Diminution in Goodwill and "Lost Incremental Equity Value"**

Nexeon characterizes Beaton's "Lost Incremental Equity Value" as a measure of both pecuniary loss and diminution in goodwill. The Court rejects the proposition that a component of damages can be direct and pecuniary while at the same time consequential.

The authorities on which Nexeon relies for the premise that "Lost Incremental Equity Value" is pecuniary in nature are distinguishable.[1] If anything, "Lost Incremental Equity Value" is akin to diminution in goodwill. Beaton's analysis, however, does not employ any of the five major formulas recognized by Washington courts for appraising goodwill. See In re Marriage of Hall, 103 Wn.2d 236, 692 P.2d 175 (1984).[2] In Marriage of Hall,

---

[1] Protectors Insurance Service, Inc. v. United States Fidelity & Guaranty Co., 132 F.3d 612 (10th Cir. 1998), did not involve tort remedies, but rather damages for a breach-of-contract claim that was governed by Colorado law. Id. at 613–14. In Protectors Insurance, the plaintiff was awarded both lost profits and the difference between its actual sale price and its reasonable value had it not been sold under distress as a result of the defendant's breach. See id. at 615. In concluding that the plaintiff received a double recovery and vacating the lost profits portion of the jury's verdict, the Tenth Circuit did not address whether either component of contract damages was "pecuniary." See id. at 616–18. Seattle Totems Hockey Club, Inc. v. National Hockey League, 783 F.2d 1347 (9th Cir. 1986), also does not concern tort law, but rather what an antitrust plaintiff may recover if excluded from the relevant market by anticompetitive activity. See id. at 1351. In Cooper Distributing Co. v. Amana Refrigeration, Inc., 63 F.3d 262 (3d Cir. 1995), the jury awarded damages under the New Jersey Franchise Practices Act, which were overturned because the date on which the franchise at issue was valued bestowed a double recovery on the plaintiff. Id. at 278. Johnson v. Oroweat Foods Co., 785 F.2d 503 (4th Cir. 1986), is another breach-of-contract action. Sierra Wine & Liquor Co. v. Heublein, Inc., 626 F.2d 129 (9th Cir. 1980), involved antitrust and breach-of-contract claims. Action Marine, Inc. v. Continental Carbon Inc., 481 F.3d 1302 (11th Cir. 2007), concerned claims of negligence, wanton conduct, nuisance, and trespass relating to the defendant's release of "carbon black," an "oily, adhesive, and penetrating" pollutant, into the air. Id. at 1307–08. Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wn.2d 712, 845 P.2d 987 (1993), addressed whether, for a breach of warranty claim governed by the Uniform Commercial Code, diminution in goodwill is recoverable as an element of consequential damages. Folsom v. County of Spokane, 106 Wn.2d 760, 725 P.2d 987 (1986), provided guidance on the manner in which a leasehold should be valued for real property tax purposes. None of these decisions defined pecuniary loss in the context of a claim for tortious interference with a business relationship, and they do not support Nexeon's theory that "Lost Incremental Equity Value" represents pecuniary loss.

[2] The Marriage of Hall Court outlined the following methods for valuing goodwill: (i) straight capitalization accounting (capitalizing average net profits at a specific rate, for example, twenty percent (20%)); (ii) pure capitalization of excess earnings; (iii) the Internal Revenue Service's system for capitalizing excess earnings; (iv) the market value approach; and (v) reliance on a buy/sell agreement, unexercised existing option, or contractual formula in a partnership or corporate agreement. 103 Wn.2d at 243–45. The Marriage of Hall Court cautioned that these formulas are not exclusive and that they should not be used in isolation. Id. at 245.

the Washington Supreme Court observed that goodwill "is a property or asset which usually supplements the earning capacity of another asset, a business or a profession. Goodwill is not the earning capacity itself." Id. at 241. Beaton compared the discounted cash flow ("DCF") that was projected before the litigation began with a combination of actual annualized DCFs for 2022, 2023, and 2024 and subsequent DCFs that were projected during the course of the lawsuit to arrive at another nine-figure number, which Beaton characterized as "the diminution in the value of Nexeon's equity." Beaton Report at ¶¶ 55–57 (docket no. 182). These computations improperly commingled earning capacity (i.e., the money coming in and going out that permits the company to carry on with business) with what might be considered Nexeon's goodwill. Thus, the Court does not accept Nexeon's assertion that "Lost Incremental Equity Value" is equivalent to diminution in goodwill. Beaton's analysis is premised primarily on hypothetical cash flows, as opposed to historical data or industry information, and his calculations do not establish Nexeon's fair market value or the value of its goodwill either before or after September 23, 2022, when this litigation commenced. Moreover, because Nexeon cannot establish pecuniary loss, it would not be entitled to recover diminution in goodwill, and Beaton's speculative testimony on the latter subject would not be helpful to the jury. See Fed. R. Evid. 702. Thus, Beaton's Scenario 2 concerning "Lost Incremental Equity Value" is not admissible opinion evidence, and Group14's motion to exclude Beaton's testimony, docket no. 180, is GRANTED.

/ / /

/ / /

**B. <u>Dismissal of Counterclaim</u>**

Given the Court's exclusion of Beaton's testimony and Nexeon's representation that its alleged damages are solely as calculated in Beaton's report, the Court concludes that Nexeon cannot, as a matter of law, prevail on its counterclaim for interference with business expectancy and that no purpose would be served by allowing this matter to proceed to trial. <u>*See*</u> <u>*Jinni Tech*</u>, 2020 WL 5095458, at *7–8 (dismissing a tortious interference claim because the plaintiff's "evidence of pecuniary damage is insufficient," did not "afford 'a reasonable basis for estimating loss,'" and "would subject the jury to 'mere speculation or conjecture'").

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1) Group14's motion to exclude the testimony of Neil Beaton, docket no. 180, is GRANTED;

(2) Nexeon's counterclaim for tortious interference with contract or business expectancy is DISMISSED with prejudice;

(3) All other pending motions, docket nos. 192, 196, 198, 200, and 205, are STRICKEN as moot;

(4) The Clerk is DIRECTED to enter judgment consistent with this Order;

(5) Any renewed motion for attorney's fees pursuant to the Defend Trade Secrets Act and/or Washington's Uniform Trade Secrets Act shall be filed within twenty-eight (28) days of the entry of the Judgment; and

/ / /

(6) The Clerk is further DIRECTED to send a copy of this Order and the Judgment to all counsel of record and to CLOSE this case.

IT IS SO ORDERED.

Dated this 7th day of October, 2026.

Thomas S. Zilly
United States District Judge